# Cain *et al. v.* The State.

*Scire Facias against Bail on Forfeited Recognizance.*

1. *When bail are dicsharged, by confinement of principal under legal process.*— To a *scire facias* on a forfeited recognizance, it is not a good plea by the sureties, that their principal was, at the time of the rendition of the judgment *nisi*, confined in the penitentiary of another State, under a conviction for felony there had before a court of competent jurisdiction ; for, *non constat* that the confinement did not terminate before plea pleaded, or before the rendition of final judgment. But such confinement, even if it still continued, would not discharge the sureties ; since the impossibility of performance created by act of the law, such as excuses the non-performance of a condition, must be by the act of the law which creates the obligation.

2. *Judgment final against bail; for what amount rendered.*—When judgment is made final against bail, the court is authorized by the statute (Rev. Code, § 4258) to make it absolute for the full amount of the penalty, or any part thereof, according to the circumstances of the case; and the confinement of the principal in the penitentiary of another State under a conviction for felony, since it renders his appearance or surrender impossible, "might be a circumstance inducing the court to mitigate the judgment to a sum less than the penalty."

APPEAL from the Circuit Court of Tuskaloosa.
Tried before the Hon. WM. S. MUDD.

H. M. SOMERVILLE, for appellants.—The sureties are excused for the non-performance of the condition of their bond, when performance was prevented by "the act of the law."— Bacon's Abr., tit. *Condition,* 2; 8 Cowen, N. Y. 298–9. That an arrest and imprisonment for another offense is the act of the law, see *People v. Bartlett,* 3 Hill, N. Y. 570 ; *Belding v. The State,* 25 Ark. 315 ; *S. C.,* 4 Amer. Rep. 27. The case of *Ingram v. The State,* 27 Ala. 17, sustains the same principle, though it holds that the sureties are not discharged, where the subsequent arrest and imprisonment are in the same State with the original proceeding, because they have an adequate remedy by *habeas corpus.* Where the subsequent arrest and imprisonment are in another State, the authorities are conflicting on the question, whether or not the sureties are thereby discharged; and the Supreme Court of the United States, by a bare majority of four to three judges, held that they were not; but the weight of authority and the force of reasoning, as expressed in the dissenting opinion of

[Cain et al. v. The State.]

FIELD, J., are against that conclusion, and the decision was by a minority of the whole court.—*Taylor v. Taintor*, 16 Wallace, 376.

JNO. W. A. SANFORD, Attorney-General, for the State, cited Rev. Code, §§ 4250-51; 1 Bishop's Crim. Pro. §§ 694-5; *Taylor v. Taintor*, 16 Wallace, 366.

BRICKELL, C. J.—George M. Simpson entered into recognizance, with the appellants as his sureties, to appear at the Fall term, 1875, of the Circuit Court of Tuskaloosa, to answer an indictment, therein pending against him, for an assault with intent to murder. Failing to appear, a judgment *nisi* was rendered on the recognizance, against him and his sureties, and a *scire facias* to show cause why the judgment should not be made final, returnable to the next term, was awarded against him and his sureties. The *scire facias* having been returned *not found* as to him, but *executed* on the appellants, they appeared, and pleaded in bar, that when the judgment *nisi* was taken, the said George M., the principal, was in custody of the lawful authorities of the State of Arkansas, confined in the penitentiary of that State, under a conviction for felony, there had before a court of competent jurisdiction. To this plea the State demurred; the demurrer was sustained, and final judgment rendered against the appellants, which is now assigned as error.

We cannot doubt that the demurrer was properly sustained. The plea limits the confinement of the principal in the penitentiary of Arkansas to the time of the rendition of judgment *nisi*. The term of imprisonment to which he was sentenced is not averred, and, consistently with every fact stated, that term may have expired, and he be at liberty to appear in obedience to his recognizance, and in exoneration of his bail, before plea pleaded, or the rendition of final judgment; or, he may, within the knowledge of his bail, have returned to this State, so that they could have arrested and restored him to the custody of the law.

2. The judgment *nisi*, under the statute (R. C. § 4258), is not necessarily made absolute for the penalty of the recognizance, or wholly discharged. The court, *according to the circumstances* of the particular case, may make the final judgment absolute for the entire sum expressed, or any part thereof. The impossibility of the appearance of the principal at the time of the judgment *nisi*, not continuing until the final judgment, not preventing his voluntary appearance, or his arrest by his bail, and surrender, cannot excuse the default; while the fact of such impossibility, though it may

[Cain et al. v. The State.]

not be of the character which will excuse entirely, existing when the judgment *nisi* was taken, and continuing until final judgment, might be a circumstance inducing the court to mitigate the judgment to a less sum than the penalty. Such is the purpose of the statute in clothing the court with the power of rendering the final judgment for the whole, or a part only of the penalty, according to the circumstances of the particular case.—*Devine v. State,* 5 Sneed, 623.

Apart from this consideration, accepting the plea as if the averred impossibility of appearance of the principal not only existed when the judgment *nisi* was taken, but was continuous to the day of the final judgment, does it excuse the breach of the condition of the recognizance? If the performance of a condition, possible when made, becomes impossible by the act of God, or by the act of the obligee, or by the act of the law, the obligation is discharged. No act of God—no act of the State of Alabama, the obligee of the recognizance—has intervened to prevent the performance of the condition. If performance has been prevented by the act of the law, it is not the act of the law of the State of Alabama. The laws of this State authorized the execution of the recognizance, prescribed its condition, defined the extent of its obligation, and the relative rights and duties of the parties to it. In reference to this law, the parties contracted; and this law silently incorporated itself into, and became part of the contract. Can it be supposed, that the parties contemplated that non-performance of the condition should be excused by the act of any other law, than that in reference and in obedience to which they contracted? Can a foreign law, of which courts do not take judicial notice—enforced only as matter of comity, when not inconsistent with our laws and policy, and when contracts have been made in reference to, or rights have vested under it, create an impossibility to enforce our own criminal laws, incapable of enforcement elsewhere? On what principle, or on what consideration of policy, or of comity, or of right springing from the constitutional relations existing between the several States, shall the State abdicate the enforcement of its criminal laws, and award supremacy to the criminal law of a sister State? That is the proposition of the plea, when reduced to its last analysis.

The relations existing between the several States; the facility of passing from one to another, separated often by mere imaginary lines; members of a common government; the citizens of each entitled in any or all to rights and immunities, and the changes of residence from one to another which are constantly being made, have often given occasion

for the consideration of this question; and uniformly, so far as we have discovered, the courts have decided, that the law which renders the performance impossible, and discharges the obligation, must be a law of force in the State where the obligation was assumed, binding on her authorities. The case of *Taylor v. Taintor*, 16 Wall. 366, is an exhaustive discussion of the question, and the authorities bearing on it. The same case may be found in 36 Conn. 242, and 4 Amer. Rep. 58.

At common law, when bail was given, and the principal relieved from the custody of the law, he was regarded, not as freed entirely, but as transferred to the "friendly custody" of his bail. They had a dominion over him, and it was their right, at any time, to arrest and surrender him again to the custody of the law, in discharge of their obligation. They were sometimes said to be his jailors. Without process specially addressed to them, in person, or by agent, they could pursue and take him, in his own house, though a violent entry was necessary, or on the Sabbath, or follow him into another State. They were said to have the principal always upon the string, and they may pull it when they please, to surrender him in their own discharge. This right of bail is of such importance that it has been introduced into, affirmed, and regulated by our statutes.—R. C. §§ 4250, 4251. The surrender, made at any time before the discharge of the bail, exonerates them under these statutory provisions. By their own act—by their voluntary intervention in the course of the administration of the criminal law—they acquired custody of the principal. If negligently they permitted him to pass beyond the jurisdiction of the State, it was their own fault, the consequence of which they must abide, and it cannot be received as an excuse for a breach of the recognizance.

We repeat our concurrence in the judgment of the Circuit Court, and it must be affirmed.