175 So. 354

## KNABE v. BERMAN.

### 3 Div. 210.

Supreme Court of Alabama.

June 24, 1937.

Walter J. Knabe, of Montgomery, for appellant.

434

Bernard Lobman and Alex C. Birch, both of Montgomery, for appellee.

FOSTER, Justice.

The only question presented on this appeal is whether that feature of section 7409, Code, by which a wife is granted the right to a divorce when she has lived separate and apart from the bed and board of her husband for two years (Gen.Acts of 1933, p. 142) without support from him, when she has been a bona fide resident of this state during that period, has applica- tion when during that time the husband was and continued to be insane.

It is contended by appellant that when the husband is insane, subdivision 7 of section 7407, Code, alone controls, and provides an exception from the operation of section 7409, supra. A study of the history of those two features of the law will shed some light upon that inquiry.

The separation feature of section 7409, to which we have referred, first appeared in an amendment to section 3795 (now 7409), Gen.Acts 1915, p. 370, in which the waiting period was five years, during all of which time she must not have received support from her husband. At that time there was no provision for divorce on account of insanity as set forth now in subdivision 7 of section 7407. But on September 30, 1919, there was approved by the Governor two acts of the Legislature, one (page 878) further amending section 3795 (7409), by providing that although the period of separation shall be the same as before, to wit, five years, the period in which she shall not receive support from him was cut to two years before filing the bill; and the other act approved on September 30, 1919, page 840, added subdivision 7 to section 3793(7407), whereby a right to divorce was granted to either party, if the other shall after marriage have been confined in an insane asylum for a period of twenty successive years, and shall be hopelessly and incurably insane at the time of filing the bill. This was amended by an act of September 28, 1932 (Gen.Acts Ex.Sess., p. 52), by changing the period of confinement in the asylum to ten instead of twenty years, and again amended by an act of March 2, 1937 (Gen.Acts 1936–37, Ex.Sess., p. 247), by changing it to five years.

Section 7409, Code, has been also amended by an act of April 19, 1933 (p. 142), so that the waiting period is fixed at two years, during which the wife shall receive no support from the husband. While the act of 1915, supra, was in effect, and before it was amended in 1919, a case appeared in which the bill was filed January 25, 1916. Barrington v. Barrington, 200 Ala. 315, 76 So. 81. The court held that it was not a remedial statute, but created a new right not intended to be retroactive, and was therefore without that effect. After the amending act of September 30, 1919 (page 878), was passed the same party filed a new suit, and as

so amended the act was tested. The validity of the Act was challenged on constitutional grounds, to wit, want of due process, because of its inequality, being a right conferred only on the wife, not on the husband. It was held not to be subject to that contention. In discussing that question the court necessarily gave attention to its meaning, as follows: "So far as the policy of the statute is concerned, it is clear that it has no regard for the question of marital fault or provocation in or by either party. Manifestly it intends to deal simply with a social and economic status—a fait accompli; and, the remedy of divorce being already available to the husband who has not consented thereto, it extends the same remedy to the wife. The object is to put an end to a situation of the parties which is barren of good, capable of evil, and probably irremediable by any other means." Barrington v. Barrington, 206 Ala. 192, 89 So. 512, 513, 17 A.L.R. 789.

It is evident that the Legislature made a distinct departure in this enactment, and followed it with a change of policy in respect to alimony. Gen.Acts 1933, Ex. Sess. pp. 118 and 119.

The interpretation of the act of 1919 in the case cited above must have been approved by the enactment of the amendment in 1933, as well as in 1937. So that it does not contemplate or require that there shall be any fault or provocation or any other act or omission on the part of the husband to support the right here granted to the wife.

■ It is of course well understood that when a ground of divorce is dependent upon the voluntary act or omission of a spouse, that ground cannot exist if he is insane. Wray v. Wray, 19 Ala. 522; 19 Corpus Juris, 76, 77, § 170.

But this feature of section 7409, as amended, supra, was never dependent upon the voluntary conduct of the husband, either active or passive; but it is given as a gratuity to the wife if she chooses to accept its provisions and observes them. It matters not under its terms or purpose what the status of the husband may be, or what are his wishés, attitude, or conduct which may induce the decision of the wife. So that it can have no effect on her rights in this respect whether he is sane or insane, if its terms are given effect. But was insanity intended by the acts of September 30, 1919, and of 1932, Ex.Sess., and of 1937, to be an exception? Those acts extend the privilege to either party. Section 7409, as amended gives it only to the wife. Section 7407, as amended, provides for confinement in the asylum for a fixed period of consecutive years; and at the time of filing the bill he must be hopelessly insane, and it is not refused because he or his estate has provided support to the wife; and residence of the wife in Alabama during that period is not required.

So that if the husband is insane, whether or not he is confined in the asylum, we see no reason why she cannot exercise her right to separate from him, decline support, reside in Alabama, all for two years, and come squarely in the letter of section 7409, as amended. That will affect her right to alimony, and will appeal to the court's discretion, whether he should grant alimony when a divorce decree is rendered on that ground.

Under the insanity statute, she may accept support and have a greater claim for alimony, and is not required to reside in the state so long, but he must be hopelessly insane and be confined for the fixed number of successive years.

There have been statutes enacted in other states, and they have received interpretation by the courts. 51 A.L.R. 763, 769; 97 A.L.R. 986; 19 Corpus Juris, 71, § 143. In Texas it is said to be expressly made by the statute inapplicable where either party is insane. Daugherty v. Daugherty (Tex.Civ.App.) 198 S.W. 985. Some of the cases hold that such statutes do not apply when the separation was due entirely to confinement of one of them in an insane asylum, though the act does not so provide in terms. Messick v. Messick, 177 Ky. 337, 197 S.W. 792, L.R.A.1918A, 1184.

But we cannot say that when a wife chooses to separate from her husband and refuses to be supported out of his estate, such choice on her part is not available to the wife as a ground for divorce under this statute because the husband is insane, in or out of the asylum. The separation may be her act in order that section 7409, as amended, shall operate; that is to say, that she shall live separate and apart from his bed and board and receive no support from him. No act of the husband is required.

We cannot accept the interpretation which other states have given their acts

somewhat like ours, but different in such respects as may have led them to a different result were they considering our statute in its historical setting.

The bill in this case alleges that the respondent husband is confined in a veterans' hospital in Virginia, and is a non compos mentis. It alleges the substance of the requirements of separation as contained in section 7409, as amended.

There was an order of publication made and published and summons issued and served by registered mail, and a competent attorney was appointed guardian ad litem, who accepted the appointment, and has duly protected the rights of the respondent. This was due process. Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820. The evidence without conflict shows that the facts exist as alleged in the bill.

Affirmed.

All the Justices concur, except GARDNER, J., who dissents.

GARDNER, Justice (dissenting).

The question is one of legislative intent, and I am unable to bring my mind to the conviction that the lawmaking body intended this statute to be given effect when during the period of nonsupport the husband was confined in an asylum as a person of unsound mind, or for that matter confined in a penitentiary as a felon.

In Barrington v. Barrington, 206 Ala. 192, 89 So. 512, 17 A.L.R. 789, was the observation that this period of separation is sufficiently long for the wife's reflection upon the matter of final separation. But there is to be considered also the opportunity on the part of the husband to seek reconciliation, which, as pointed out in Camire v. Camire, 43 R.I. 489, 113 A. 748, is an additional reason for construing such statutes as contemplating a normal condition of the husband during this period of time.

From a practical standpoint, as readily appears, the construction here given the statute materially alters the grounds of divorce for insanity as well as imprisonment in the penitentiary. I cannot believe such was the legislative intent.

The cases construing statutes of a similar character are uniformly opposed. They are found cited in the note to Sitterson v. Sitterson, 51 A.L.R. 760, to which may be added Messick v. Messick, 177 Ky. 337, 197 S.W. 792, L.R.A.1918A, 1184, and further elaboration here is unnecessary.

I therefore respectfully dissent.